Our next case today, number 241223, United States v. Angel Perez-Otero. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, Jose. I'm Olmo Rodriguez on behalf of Mr. Perez-Otero. May I reserve two minutes for rebuttal, please? May. If I may please report. Just as big political donor Oscar Santamaria circumvented electoral law limits by providing cash and lists of friends and family, who he would then reimburse. The prosecution circumvented the law of the United States as established in McCormick. That there was a need for an explicit element of quid pro quo in this kind of cases. The prosecution tried to evade the fact that the only testimony brought to the grand jury was an agreement to pay political campaign contributions pursuant to which the donor was making payments and the mayor was receiving those payments. The own evidence of the government shows records, electoral records were friends and relatives of the donor. Had been making political contributions in the relevant period, thereby corroborating the practice of making cash donations to circumvent the limits. The council, but you're saying that the government is bound by what was argued to the grand jury indictment, but you have an indictment. So you go to the indictment, you don't go to what was raised specifically before the grand jury. But the indictment has to reflect what went before the grand jury. There's no other way to have a legal process if the indictment doesn't show up, doesn't show that the only testimony was of political campaign contributions, then what kind of indictment is that? It's defective. This is just a factual point. Are you saying that the evidence presented to the grand jury was more limited than the evidence presented at trial, and that it was more limited in the sense that all that was presented to the grand jury was evidence of campaign contributions? And that more than evidence of campaign contributions was presented at trial? No, it is the same testimony- Does this just depend on your characterization as everything is a campaign contribution? I'm just talking about the agreement, okay? Before, which is important part here, was there a quid pro quo? Was it implicit or explicit expressed? Well, the- But I guess I'm just trying to, the government contends some of the things you're characterizing as evidence that there were campaign contributions is not a fair characterization of the evidence, correct? That's what the government is saying about some of your arguments. That's what they argue. Yes, so, but there were some instances of actual campaign contributions that even the government agrees are campaign contributions, correct? Well, it's not- And they're not saying those were the things for which the exchange was made? It's confusing because the government first- Well, it is confusing, but I'm- They have a witness that said that he agreed to pay for a political campaign, and he's paying- Is that at the grand jury you're talking, or it's- I'm at the grand jury stage, yes. Okay, but the issue is, I'm looking at your brief. You don't have a claim in the issue of pre-trial and pre-review that the information presented to the grand jury could not have supported a final prologue cause as to what is charged. So, whatever happened before the grand jury is not an issue on appeal. You're not questioning the grand jury process itself. It is, because we filed a motion to dismiss on account of the fact that the indictment does not reflect what was brought before a grand jury. And all the testimony, or the only testimony before a grand jury is that all the payments in questions were to pay political campaign contributions. That's it, and then we have an indictment that omits all of that. Then we have a prosecutor who, in writing a motion before the court to oppose our motion to dismiss, says, no, we didn't charge him for those political payments. We only charged him for three payments of $5,000 made with FBI money. Help me with this, okay, because I'm having trouble following what the dispute is between the two of you. On its face, the indictment does not say that the only way this can be proved is through campaign contributions, correct? On the indictment? It doesn't show that agreement. On its face, it doesn't say that. It doesn't say what the agreement was. Then at trial, the government contends some of the evidence it put forward in support of the indictment relied on an exchange for things other than campaign contributions, correct? No, the prosecutor said in writing that he was only going to be presenting evidence on the three payments of $5,000. The rest was not being charged. That's what the prosecutor said. At trial, the government put forward evidence that did not involve an exchange of campaign contributions. No, it was the same evidence. They just tried to characterize it as not a political campaign. Okay, so one argument you could be making to us is, no matter what they say, the only evidence that was put forward, even at trial, was of a campaign contribution. Correct. If we disagree with you on that, okay? If we disagree with you about that, and we think some of the evidence that was put forward is properly characterized as not being a campaign contribution, what is your remaining argument? That, anyways, there's not even an implied quid pro quo. Even if there is- Okay, and if we disagree with you on that, what is your argument? Well, Your Honor, if the prosecution stated to the court that he was only charging for three payments of $5,000 that came a year after the agreement to make the payments, then it would be a gratuity. I got it. But I take it your argument, then, is that the relevant evidence was evidence of campaign contributions. Correct. That makes the discussion of the grand jury and what was before the grand jury kind of irrelevant. If you were right about that, then the fact that the indictment doesn't make any reference to the campaign contributions, and there would be a McCormick problem, et cetera, I fully understand that. The government's response to you is, but you're just mistaken because they put forward evidence that was not campaign contributions, and they explain why. So, what is your response to that? That they didn't put forward evidence of campaign contributions. What about the payment of the debt and that type of thing? Yes, all the payments were for that debt. And as the FBI told the grand jury and said to the jury- Was that a campaign contribution, payment of the debt? Yes, it was being applied to the debt, and it was being applied with this list of friends and family that would match the cash that was being provided. That was a violation of electoral local laws. And the same kind of scheme we can see in the Turner case where- Can I ask you something different? Maybe just, if I give a political candidate, I can't give anybody anything, but if I gave a political candidate $100 before the election, that's a campaign contribution. If I say, here it is, I give it to your campaign fund. After the election, if I give the candidate money to pay off their debt, is that a campaign contribution within the meaning of McCormick? Yes, I'm also- Is there some case that says that? Well, Your Honor, the thing is, what is the money being used for? Paying off the debt. Of a campaign, and in this- Is that the same as a campaign contribution? Yes, Your Honor. Yes, Your Honor. Is there some case that says that? Well, Your Honor, not that I can tell you about at the moment, but the matter- So is that the main point of dispute, as you see it? That you think that the payments for the campaign debt are campaign contributions within the meaning of McCormick? Yes, and therefore, there had to be an explicit quid pro quo, which there was no. Okay, but if you go to your Rule 29 argument in the government's response, there is evidence that was presented to the jury. For example, there were discussions between your client and Santa Maria about awarding contracts. There's talks about contracts and- That's the major's job, Your Honor, to gather the best contractors to bid for his debt. Okay, but that is something that goes to the jury and has to be, from our perspective, considered in the light most favorable to the government. We don't re-weigh the evidence the jury considered. If the jury, where's the error there? That is not evidence of any wrongdoing. Well, there was, I mean, it's legitimate for a mayor to discuss municipal projects. But the evidence also suggested that he was controlling the decision makers and guaranteeing through his control of the decision makers that he would, in fact, win the bid. The only evidence that the prosecution uses to argue that is that he, as mayor, appointed the persons in charge of every division of the municipality that had to evaluate these proposals and that he shared with them socially. Well, that is not evidence of control. There's other evidence here. For example, he's getting cash payments, and literally under the table cash payments, and they're not being reported electorally. Yes, there's evidence- Isn't that something that goes to the government's case, the weight of the evidence, and the jury's consideration? The evidence shows that the right-hand man of Santa Maria is listed in making donations during the relevant time. And the evidence shows that Santa Maria said that he will give lists of friends and family to match up with the cash that he will be giving. So yes, they were breaking the law, but not the, they were breaking electoral law to circumvent the limits by giving cash. Just let me understand, I thought you were making, there's a number of different arguments you could be making. One of them, I thought, is along these lines, that there's no evidence of a quid pro quo, right? Just insofar as there's a requirement for it, there's no evidence of it. Correct, yes. And you heard my colleagues asking about, well, what about the fact that there was these under the table payments and that in return for that he's steering contracts? Okay, putting that aside, I thought you were making this separate argument that because the indictment doesn't specifically mention campaign contributions, under McCormick there's a problem even if there ends up being evidence that would be sufficient. Correct, because there would be a variance. Because you would have a variance then, because inevitably they had to do it if that's what they're now going to prove. That hinges on the payments being campaign contributions, correct? Correct, Your Honor. Okay, and you're saying that the payments that are campaign contributions are the payments to pay off the campaign debt, correct? Yes, Your Honor. Okay. Which were made to match with these- If you're wrong that that constitutes a campaign contribution under McCormick, then that argument fails, you would agree. Excuse me, Your Honor, I didn't understand. If those payments to pay off the debt don't constitute campaign contributions within the meaning of McCormick, then that variance argument fails, right? Correct. But the evidence of the prosecution is the main one is saying that it was political contributions, but it's cutting the limits. There were illegal political contributions, but they were still political contributions. Illegal because they went over the limit. And your view is there's no other payments other than the payments that the government relied on. There's no other payments other than the payments to pay off the debt. There's no other payments. It's only those payments. And then when Santa Maria is approached by the FBI agents, the FBI agent tells him, keep doing that payment, okay? But next time, we're going to do it with my funds and we're going to record it. So it was an ongoing, the ongoing payment for political campaign, which there is evidence that went for the committee. And it was raised, but not under Santa Maria's name, under other people's name. Could the jury have rejected that it was campaign payments, factually? I believe no, Your Honor, because I believe it was proven beyond a reasonable doubt. But there were no campaign records kept. And you say that there were no records kept because they were trying to skirt the local election laws. But that's still evidence that cuts against it being a campaign contribution, regardless of what you say the purpose of it being was. There was also testimony that the campaign debt was paid off at some point, but he continued to make payments. That's a testimony that is not very clear, because he said that he never kept track of any payments. He had never said that before, so it's kind of a convenient- But a reasonable inference from a jury could be that that was not a campaign contribution. Well, no, Your Honor, because the prosecution introduced into evidence the electoral record that corroborates the testimony of Santa Maria that he was giving cash and it was being matched to his friends and family, because there are the names of his friends and family there. It was conflicting evidence which the jury had to sift through and make a determination as to whether it was or was not. But I don't see how you can say the evidence didn't support an inference contrary to what you're suggesting is the only thing that the jury could have found. There was conflicting evidence. Well, Your Honor, as the opinion in which you participated in the case of Turner in 2022, the parties, it was important there, what was the characterization that the parties made of the payment? And here, the characterization is always political campaign contributions. The cooperating witness could have easily recorded the mayor saying, thanks for the money that I'm getting for the contracts. That never happened because it's not true. If that happened in a recording, Mayor Perez would have said, what are you talking about? I'm not giving you any money for any contract. Before you end, just to address this point, what about the payments that were made after the campaign debt have been paid off? Your Honor, the campaign debt, that testimony is very ambiguous and it goes against his own testimony that he never kept track of the payment. Thank you. And the chronology that I make, that it places the payments in the same time frame. Thank you. Thank you, Counsel. Will Attorney for Appalachia please come up and introduce yourself on the record to begin? Good morning, Your Honors. May it please the court, Dave Lieberman for the United States. Unless the panel prefers otherwise, I'll start with the sufficiency dispute and then loop back to the indictment claims. On sufficiency, this sufficiency claim fails for either of two reasons that the panel's questions have suggested. Number one, a reasonable jury, viewing the evidence in light most favorable to the government, could conclude that those cash filled envelopes from Santa Maria to Perez during the charge period were not campaign contributions. But second point, even if we assume that they were, it simply means under McCormick, the jury had to find an explicit quid pro quo. Can you just back up one second? If they were to pay a campaign debt, do you think they fall within McCormick then? Is that clear? Or are you just not arguing that point? I am not arguing that. I think if- You're taking it as true that if they were, I'm not saying you agree that they were, that a jury couldn't find otherwise, but if they were to pay off the debt, and if the record compelled that conclusion, you're not suggesting that McCormick wouldn't apply? We have not pressed that claim here. Let me divide up that- Your claim is really, he's getting money under the table, getting kickbacks, that's the government's argument. That's the point, and I think I can briefly drill down on Judge Barron, your question on the $70,000 that was allegedly to pay off the debt, and then the record showing that the payments continued. On the claimed $70,000 payments to pay off the debt, a reasonable jury could find that they were not campaign debt at all, and therefore, even assuming that falls under McCormick, McCormick wouldn't apply. Because the government adduced evidence that Puerto Rico law in the campaign disclosures requires candidates to identify preferential debt payments and arrangements. And Perez's campaign here filed those reports, never listed a $70,000 campaign debt. So a jury- Calling it a contribution doesn't make it one. Correct. But, and then Santamaria testified that he paid off the $70,000 and then continued to make payments, all with the goal of bringing municipal contracts. Just, because this is just a point of law that might matter in resolving the case, that I want to make sure we fully understand what we'd be doing. When you're making the second argument, I'm anticipating, so maybe I'm anticipating incorrectly. But when you're making the second argument, you're suggesting there's a, the additional continuation of the payments clearly is not a problem. Correct. But I just, the only pieces, part that concerns me about that is the implication is, well, maybe we can assume the ones up to that time were campaign contributions. And when you have a mixed case like that, it's not entirely evident to me how McCormick figures into it, and whether it has to be noticed in the indictment, and whether there's a variance then, etc. You see those set of complications? Okay, so the other route you were suggesting we go is even in that earlier time period, a jury wouldn't be required to treat it as a campaign contribution then. Correct. Okay, that requires us to have a definition of what is a political contribution for purposes of McCormick. Yes, and I don't think- So is there a way to resolve it in your favor without us having to define that line? Yes, Your Honor, and that's the second sufficiency argument that I previewed at the start. Even if we assume McCormick applied to every- Before you get to that, because if we were not to agree with you on that, if we did it on the first ground, we would then have to define what a political contribution is. No, Your Honor, not on the facts of these cases, and let me try to explain why. The theory, the defense theory as I understand it is that $70,000 was campaign debt. Campaign debt qualifies as a contribution under McCormick. My response is, to the first premise, the evidence supportedly shows that these were not campaign debt payments. And what supports that? What are the facts that would provide the basis for that? Yes, there was testimony and evidence from one of the officials with one of the Puerto Rico offices that campaigns have to file reports with everything, contributions, expenditures. And there's also a section in there to list loans and debt repayments. And there was, Perez's campaign did not list any of these payments from Santa Maria of the $70,000 as payments related to a campaign debt. The evidence also showed that Perez's campaign, at the relevant time, didn't have, I think, only a $6,000 debt. And so a reasonable jury, viewing the evidence in light most favorable to the government, could say, this wasn't campaign debt at all. This was just personal payments to Perez. But let's say, for whatever- And if we agree with you on that, then the variance argument goes away and the sufficiency argument goes away, and that's the end of it, correct? Yes, Your Honor, because the variance claim only works if there's a variance between the indictment and the trial evidence. And my argument is, there was not. A reasonable jury, viewing the evidence in a light most favorable to the government, could fairly infer that all of the payments from Santa Maria to Perez were not campaign contributions. But let me- And let me also ask, I believe it may be in the record, this is not a rookie candidate with rookie electoral team. This is somebody who's been elected on prior occasions, including the House of Representatives, so any person should know about this, correct? Yes, and to bolster that, there was evidence that Perez attended campaign finance training classes. And was personally certifying some of those reports as accurate. But let me step to my second point on sufficiency. Even if this court assumes that McCormick applies, then the question just turns, could a reasonable jury, viewing the evidence in light most favorable to the government, find an explicit quid pro quo agreement? And the answer is yes, a reasonable jury could infer that Perez accepted the money with the intent to provide, steer municipal contracts and other municipal assistance. Can you just help me understand what the McCormick line is? Because you went from, could we find that there was an explicit agreement? Yes, you could infer that they had agreed. Did you see the tension between those two sentences? Yes, and the line between what is a McCormick quid pro quo and what is a non-McCormick quid pro quo, I don't think has been fully fleshed out in this circuit's case law yet. But as I understand it, McCormick, a defendant who says these are campaign contributions, gets a jury instruction requiring the jury to focus and to find specificity with respect to that quid pro quo. Yes, so then the question is, as a reviewing court under Rule 29, we ask, could a reasonable jury, viewing the evidence in a light most favorable to the government, find the type of quid pro quo that McCormick contemplates? The answer in this case is yes, I think for some of it. And I guess what I'm trying to figure out is, when we do that, can we find it circumstantially by inference if what we're looking for is an express agreement? Yes, and I think that's clear from several of this court's cases. Correa comes to mind where this court said, a McCormick style quid pro quo can be inferred from circumstances. I think it's in Turner. In every case, we cited the Benjamin case from the Second Circuit where that panel carefully charted out the idea that we don't need a term sheet, it doesn't need to be written down. The jury just, like in any factual dispute, can infer it from the consequences or the circumstances. And that largely tracks back to- Just tell them, what would we be looking for in the McCormick circumstance that we're not looking for in the ordinary circumstance? Your Honor, it's hard for me to articulate that in a Rule 29 setting, because I think in most cases- Comes up as an instructional? Yes, I tried to chart out the McCormick case law. It comes up as a jury instruction dispute. Did we have, and you're saying the instruction effectively included the McCormick instruction. Yeah, the district court fully instructed the jury on the McCormick requirement. I think it's at 892 and 893 and 899 and 900 of the appendix. And so the only question here is, what could a jury reasonably find? Deferential standard of review. And so it's really hard for me to come up with an idea where McCormick makes a difference under Rule 29. Let me just track quickly to the indictment claims. I think these fall out for, Judge Barron, for the reasons that you suggested. Well, for a variance, there was no variance claim below, so we're here on plain error. I don't know that that matters, because under the substance of a variance doctrine, as long as the government produces some evidence from which the jury could reasonably find the disputed fact, there's no variance problem. Last point is, variance also would require Perez to show prejudice. We're on plain error, and so third prong would be his burden. And I think the district court addressed some of this at addendum page 23. The district court says that the defense team understood the government's theory of this case, that these were personal bribes from the start, and that the defense developed this McCormick type argument before trial at an early stage of the proceeding. And so I'm struggling to understand how there's prejudice, much less substantial prejudice, from the dispute here. I'll end with the top line point in the indictment. The government's theory in this case has always been that these were, in the indictment, that these were just regular bribes. And the defense here was McCormick. We don't have to preview the defense in an indictment. Those are factual allegations. And as the district court said, again, addendum page 23, the defense understood the government's theory of the case. How did the McCormick instruction come about? I believe the defense requested it. The jury charge conference, at least the actual charge, is not on the record. Did the government oppose the instruction or not? I don't think we did, your honor. I'll double check that, but I'm fairly positive that we readily accepted the McCormick instruction. And just so I understand, I guess the government's idea is what, given that the indictment, you're not arguing that the indictment did what it needed to do under McCormick? We don't think, we think the indictment on its face is fine. Because it didn't, if it had only been political contributions, then the indictment would not be fine on its face, right? Your honor, I don't know that any court has held that in this type of setting, where a McCormick issue comes up, that the government is obligated to put the McCormick requirement in the indictment. Why wouldn't it be? Because normally when we think of indictments, an indictment is sufficient under Rule 7 if we just put forward- I meant for variance purposes. Oh, for variance purposes. Yes, yes, then we, if, then, if- So then what, that's what I'm just a little puzzled by. The indictment would create a variance problem if your theory was political contributions. And yet, you don't object to an instruction on political contributions, which seems to suggest the case is going to be tried as political contributions, which gives rise to the variance problem. So what was going on? Okay. Am I missing something? I think I'm incorrectly answering the last question. You answered that, just correct me if I'm wrong, but the indictment, McCormick is not an element of the offense. The indictment only has to track the language of the statute, correct? Yes. And so I answered your last question incorrectly. Even in a case where, hypothetically, the trial evidence showed these were all campaign contributions. I don't, this indictment would still be fine. Again, the way this comes up is- So the whole variance argument's wrong for that reason, then? Yes, and it's a- That's not how you argued it to us. So I think we did. It did. We argued that the language that we used in the indictment, specifically in describing the exchanges, we included the language, cash in exchange for award of municipal contracts and payments. This is at the paragraph 11 of the indictment. Courts have held that Benjamin, Second Circuit, Siegelman, Eleventh Circuit, that type of language in exchange for is good enough to put a defendant on notice of either any bribe case or a Hobbs Act. Extortion case. And so the indictment here passes muster, even in the hypothetical world where the trial evidence showed that these were only campaign contributions. Because the language that we used in the indictment is indicative of the type of quid pro quo that McCormick envisions. Let me ask you also, one of Mr. Olmos' arguments is that before the grand jury, you never presented a quid pro quo. It was all political contributions. How far can, because you already have an indictment, how much can a district court probe into what was actually argued in the grand jury? Not very far, your honor. This is, the Supreme Court- It's a scintilla, it's a very, it's a thresh, this is not even, it's just parole cause. Right, well actually, I think that, as I understand the defense claim, that they're challenging the quantum of evidence that the government adduced before the grand jury. The Supreme Court in Cayley has said, in a criminal prosecution, the defense doesn't get to look behind the indictment and challenge the sufficiency of the evidence that the grand jury heard. And this court has repeated that phrase in the- Because otherwise, in every criminal case, it would be like in a civil case, a 12B6 motion for every case. Correct, and this court has repeated that in the Maceo case, the Rarer case that we cited in our brief. So that all tracks back to the holding of the Supreme Court's decision in Cayley. What is the underpinning, as the government understands it, of the required jury instruction that McCormick's requiring? If it's not an element. It's, the Supreme Court has said that when the payments might be campaign contributions, we should give this additional instruction to make sure that the jury, or that the jury's deliberations stray away from some of the concerns that the Supreme Court identified in McCormick when we're charging a bribe case vis-a-vis campaign contributions. That's how I understood it. Like a supervisory power? What was the, do you know what, that's what I'm asking, what's the legal source of that? Or is it some kind of affirmative defense? Your Honor, I honestly am not quite sure, and I don't think this court's case law categorizes it. Because it almost, it nearly always comes up as a jury instruction dispute. I do, I understand that. And unfortunately here it's coming up not just as a- As a rule 29. And also as a variance argument. So I'm trying to make sure that we understand what we're doing. Yes, and I, again, this is just sort of my best reading of the case law, is that when campaign contributions are involved, this additional inquiry that the jury is supposed to undertake allays the Supreme Court's concerns in McCormick about lobbying and First Amendment concerns by having the jury focus with specificity on the quid pro quo. The strong version of this argument would be McCormick is not a ground for finding a sufficiency problem. McCormick is not a ground for finding a variance. The only thing it is is a jury instruction. It was given, end of case. But that's not quite how you presented it. That's what I'm trying to understand. And again, I think we have tried to avoid those hard questions because the case law is just underdeveloped as to what, again, McCormick was a jury instruction case and then how it relates to a rule 29. We sort of accepted that it filters in. I get that, but I guess just one last time, because if you're trying to avoid the simple idea that McCormick has nothing to do with variances and McCormick has nothing to do with sufficiency, just on the variance point, I guess I'm still then just a little puzzled. You're trying to say, well, maybe it has something to do with variance, but in this case it's not a big deal. But then I'm just puzzled why the government then didn't object to the jury instruction on McCormick. Because that certainly implies we're now going to try the case as if it's a McCormick case, which is fine if you think it has nothing to do with variance, but is a little puzzling if you're trying to leave open this idea of maybe it does, but in this case it doesn't matter. Do you follow? Yeah, I follow. And I think my response to that is, as always, my trial colleagues try to reduce appellate issues. And there are two routes to conviction here. One was, these are not campaign contributions. McCormick does not apply, and then the jury needs to look for basically a non-McCormick bribery arrangement. The second route is, McCormick does apply. Are you saying that the language of the, I thought you were saying that the language of the indictment, in and of itself, is broad enough so that it could encompass both a McCormick and a non-McCormick charge. And from there on, it goes to evidentiary issues and jury instruction. Yes, Your Honor, and I think my imprecise answer there was skirting. We have the indictment issue and the Rule 29 issue. The easiest way to resolve the indictment issue is, the indictment language here was good enough to allege bribery, even if McCormick applies. And we've cited Siegelman and Benjamin, Second Circuit and Eleventh Circuit for that. Just so on those cases, those are cases where the indictment doesn't mention political contributions or does mention political contributions. I think what you may be focusing on is the quid quo quo portion of the indictment. And what your opponent's focusing on is the absence of a reference to political contributions in the indictment. Yes. And I'm trying to figure out whether the absence of that matters for purposes of this variant. So in Benjamin and Siegel, did the indictment mention political contributions? I can't recall, but what those courts were focusing on is the cash in exchange for. So if we assume- But if that takes on different significance in the indictment that's referring to political contributions, potentially than one that doesn't refer to them. I'm not sure it does, Your Honor, and I'll try to explain why. Because if it's- Are you saying a quid pro quo in either instance is unlawful? Yes. And it doesn't matter. Yes. Except for the fact that McCormick suggests that there may be this heightened requirement when it's a quid pro quo involving a political contribution. And then the 11th Circuit and the 2nd Circuit has said that McCormick requires the jury to find a specific or an explicit agreement to engage in a bribe scheme. Which otherwise doesn't have to be found, even though you have to find a quid pro quo. Yeah. And then what those circuits have held, and we think they're correct, is when the indictment says X in exchange for Y- But in all of those cases, did the indictment refer to political contributions? I honestly don't- But you see why that could matter? But I don't think it matters, because even if we assume that whatever X is, whatever the thing of value is, if the defense says X is a political contribution, in exchange for, those courts have said that that means the type of quid pro quo envisioned by McCormick. So even if- From a notice perspective to the defendant- Yes. The defendant is on notice that that in exchange language is referring to the McCormick type quid pro quo, when the indictment also refers to political contributions. And when it doesn't, arguably the defendant is not on notice of that. So I disagree with that, because the defense is going to know, all right, the indictment alleges here's the cash. And then it's- As I said before, this often comes up in jury instructions. The defendant comes in and says, those are campaign contributions. Give me a McCormick instruction, exactly as happened here. And let me ask, I would assume, and correct me if I'm wrong, that the reason you did- your trial counsel, I don't know if it was you, did not object to the McCormick instruction was if- because defense counsel was raising the issue, it's political contribution. So if you didn't raise that and there was a conviction, there would have been a possible other appellate issue, we'd be arguing instead of this today. Exactly right. That's why you're not objecting. And your argument is like, that's not political. And I'll end with what I started with. The government has two arguments as to why the bribery and extortion counts here were sufficient under Rule 21-29. One is the non-McCormick route. One is the McCormick route. I assume my trial colleagues operate in the same fashion, that my trial colleagues were quite happy to fight this case under McCormick because the jury heard sufficient, and in the government's view, ample evidence of the type of quid pro quo envisioned by McCormick. And so we would readily accept a McCormick instruction and argue to the jury. And the jury fairly found that this was an explicit quid pro quo arrangement, cash filled envelopes in exchange for municipal contracts, as well as assistance with payments and other matters and disputes related to those contracts. Thank you. Thank you, Your Honor. The government asks that the court affirm. Thank you, Counselor. Attorney Olmo Rodriguez, please come up and reintroduce yourself on the record. You have a two-minute rebuttal. Jose R. Olmo Rodriguez. The reason why the government couldn't object to the instruction, the McCormick instruction, is because the case is about political campaign contributions. Is the government now impeaching their main witness, Oscar Santamaria, upon whom they build the whole case? The only witness to say that it was never a political campaign contribution? They should have impeached him at trial. At trial, he said it was political payment. He just said that he kept paying after he reached $70,000. Let's say you're correct about that. What is your response to the government's contention that the indictment itself can't give rise to a variance because the indictment made it clear that it was talking about a quid pro quo arrangement? And so what's the problem on the variance point? What's your answer to that? After McCormick and the case of this court in Piro, where it recognized as an implicit element that an explicit quid pro quo had to be alleged, we don't have an allegation of an explicit quid pro quo. We have an indictment. What do you make of the in exchange for language? That is the regular quid pro quo, regular. It had to act like in Evans, the Supreme Court case, where they validated the instruction under McCormick because it went further and said there was a specific agreement. Well, there has to be something more than in exchange for is what the Supreme Court is saying because— And the case you said that we held made it an element is which case? U.S. v. Piro. P-I-R-O. Thank you. But, Your Honor, this was a mess, confusing from the start. We got it. Thank you. Thank you, Counselor. That concludes arguments in this case.